Virginia R. McCONNELL,
Plaintiff-Respondent,

v.

ST. LOUIS COUNTY, Missouri and
Robert E. Emerick,
Defendants-Appellants.

No. 44512.

Missouri Court of Appeals,
Eastern District,
En Banc.

June 14, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 1, 1983.

Application to Transfer Denied
Sept. 20, 1983.

Ben Ely, Jr., Victoria Spann Sheehan, St. Louis, for defendants-appellants.

Rene E. Lusser, St. Louis, for plaintiff-respondent.

SMITH, Presiding Judge.

Defendant appeals from a judgment against it of $65,000 based on a jury verdict. The judgment was affirmed by a panel of this court and a motion for rehearing thereafter granted before an expanded panel. We now reverse the judgment in part.

The lawsuit arose from a one-bus accident occurring during a "Fall Foliage" outing sponsored by the defendant, St. Louis County. Mrs. McConnell was one of 40 persons who made claims as a result of the accident. She subsequently died from causes unrelated to the accident and her executrix was substituted as plaintiff. Her suit was brought against defendant and Robert Emerick, the bus driver, who was discharged in bankruptcy prior to trial.[1] Defendant confessed liability and offered to confess judgment for $20,300.90 which was rejected by plaintiff. That figure constituted the amount remaining of defendant's $800,000 liability insurance policy not already distributed to other claimants through settlement. The amount remaining was stipulated to by the parties.

On appeal defendant raises two issues. The first is that the judgment should have been entered for $20,300.90 because of the restrictions of Sec. 537.610, RSMo 1978, imposing a maximum liability of $800,000 on St. Louis County. The second point involves the correctness of a damage instruction. Because we agree with defendant's first contention and because it offered before trial to confess judgment for $20,300.90 we need not reach the second contention.

Plaintiff contends that Secs. 537.600 and 537.610 are not applicable here because the accident occurred while the county was exercising a proprietary rather than a governmental function.

In *Jones v. State Highway Commission,* 557 S.W.2d 225 (Mo. banc 1977), the Supreme Court abolished the doctrine of sovereign immunity prospectively for torts occurring "on and after August 15, 1978." The General Assembly responded to that decision by enacting Secs. 537.600–537.650. Sec. 537.600 provides that: "Such sovereign or governmental tort immunity as existed at common law in this state prior to September 12, 1977 [the date of *Jones, supra*], except to the extent waived, abrogated or

---

1. Both Emerick and St. Louis County have appealed. On appeal Emerick challenges only the court's damage instruction. Emerick was retained in the suit for "orderly prosecution" of the cause. We do not find it necessary to address the instruction question solely because Emerick is a named appellant.

modified by statutes in effect prior to that date, shall remain in full force and effect; . . . ." Prior to *Jones,* the courts held that municipalities were not protected by sovereign immunity for torts arising from their proprietary functions but were protected from such torts arising from their governmental functions. This distinction was not applicable to the state and its political subdivisions which were fully protected under the immunity doctrine for their tortious acts. *Wood v. County of Jackson,* 463 S.W.2d 834 (Mo.1971) [1, 2]; *Payne v. County of Jackson,* 484 S.W.2d 483 (Mo.1972). We specifically so held as to *St. Louis County in Coleman v. McNary,* 549 S.W.2d 568 (Mo.App.1977). *See also, Connor v. Crawford County,* 588 S.W.2d 532 (Mo.App.1979). Pre-*Jones,* school districts were treated as political subdivisions for immunity purposes. *Rennie v. Belleview School District,* 521 S.W.2d 423 (Mo. banc 1975) [2]; *Smith v. Consolidated School District No. 2,* 408 S.W.2d 50 (Mo. banc 1966) [4–6]. The governmental-proprietary distinction drawn as to municipal corporations, but not as to political subdivisions, created the anomalous situation that a plaintiff's right of recovery for the same tortious conduct depended on whether the tortfeasor was a municipality or a political subdivision such as a county. *See, Wood v. County of Jackson, supra* (Finch, J., Concurring). Nevertheless, the governmental-proprietary distinction was not applied pre-*Jones* to political subdivisions of the state.

Following passage of 537.600–537.610, the case of *State ex rel. Allen v. Barker,* 581 S.W.2d 818 (Mo. banc 1979), came before the court. That case involved an activity which could arguably fit either the governmental or the proprietary function as defined in municipality cases. The entity involved, however, was a school district, where theretofore the nature of the function made no difference. The court, seizing upon the language of Sec. 537.600, concluded that the reinstatement of pre-*Jones* law served to reinstate also the governmental-proprietary dichotomy. The court did not address the line of pre-*Jones* cases holding such dichotomy of function was inapplicable

when determining immunity of political subdivisions other than municipalities. The court in *Barker* remanded the case to give the plaintiff an opportunity to amend the petition "to aver sufficient facts to bring the cause within the [proprietary] exception to the general doctrine of immunity." *Barker* does not specifically overrule any of the pre-*Jones* cases. Following *Barker,* three appellate decisions in reliance upon *Barker* have concluded that the immunity of a school district is to be determined with reference to the governmental-proprietary distinction. *Allen v. Salina Broadcasting, Inc.,* 630 S.W.2d 225 (Mo.App.1982); *Johnson v. Carthell,* 631 S.W.2d 923 (Mo.App. 1982); *Fowler v. Board of Regents, etc.,* 637 S.W.2d 352 (Mo.App.1982).

From *Barker, Allen, Johnson* and *Fowler,* plaintiff argues that all sovereign immunity is now determined by reference to the governmental-proprietary function test. We cannot interpret those cases so broadly. At most they serve to bring school districts into the fold with municipalities. But in the absence of an express statement that such a test is also to apply to counties, or an express overruling of the pre-*Jones* cases regarding counties, we are unable to conclude that *Barker* and its progeny intended such a sweeping result. We find it especially difficult to reach such a conclusion in view of the statutory language reinstating sovereign immunity as it existed prior to *Jones.* Prior to that decision, St. Louis County was immune from the suit brought by the plaintiff and we do not find that *Barker* changes that immunity. Plaintiff's right of recovery rests upon Sec. 537.600 and .610 to which we now turn.

■ Sec. 537.600 creates two situations in which sovereign immunity is waived, i.e.: (1) operation of motor vehicles and (2) condition of property. Plaintiff's cause of action is clearly within the first situation. In *Bartley v. Special School District of St. Louis County,* 649 S.W.2d 864 (Mo. banc 1983), the Supreme Court held that in addition to those situations the public entity must have purchased liability insurance (or establish a self-insurance plan) for the

waiver to be effective. That was also done here. The limits of plaintiff's recovery against St. Louis County must be determined by reference, therefore, to Sec. 537.-610.

In pertinent part that Section provides:

"(1) . . . but the maximum amount of such coverage shall not exceed eight hundred thousand dollars for all claims arising out of a single occurrence . . . and no amount in excess of the above limits *shall be awarded or settled upon. Sovereign immunity* for the state of Missouri and its political subdivisions *is waived only* to the maximum amount of and only for the purposes covered by such policy of insurance. . . .

(2) The *liability* of the state and its public entities on claims within the scope of sections 537.600 to 537.650 *shall not exceed* eight hundred thousand dollars for all claims arising out of a single accident or occurrence . . . ." (Emphasis supplied)

In our divisional opinion we held that determination of the amount that plaintiff could recover on this judgment was premature and that resolution of that issue should await attempts to collect the judgment. Upon reconsideration it appears that such a holding overlooks the doctrine barring collateral attack on a judgment and the language of Sec. 537.610. As was stated in *Hammett v. Hatton,* 189 Mo.App. 567, 176 S.W. 1078 (1915) [1]:

". . . validity of a judgment cannot be impeached on a motion to quash an execution issued on it. Such a motion cannot be based on the ground of mere error or irregularity in the judgment. The jurisdiction not being questioned, and the judgment not having been reversed, vacated or set aside, such a motion would constitute a collateral attack on it."

■ A motion to quash an execution cannot be substituted for an appeal and a defense which might have been valid in the underlying proceeding cannot be raised in a collateral proceeding such as a motion to quash execution. *First National Bank in Chester v. Connor,* 485 S.W.2d 667 (Mo.App. 1972) [2–6].[2]

■ It is also clear from Sec. 537.610 that no amount in excess of the statutory limit may be "awarded or settled upon." The statute does not speak to collection, but rather to award. It further provides that immunity is waived only to the extent of the limits set forth in the statute and that is the extent of the liability of the public entity. This language indicates to us that the judgment entered must conform to the statutory limits imposed by the General Assembly. Had this claim been the only one made for this accident and had the verdict exceeded the $100,000 one-claimant limit we would have no doubt that the judgment to be entered would have to have been $100,-000. We can see no difference where the parties have stipulated that the amount already paid in settlement brings the jury award above the statutory limit. While the judgment normally follows the verdict, this is not inevitably true. Where the amount of recovery is limited as a matter of law, the judgment of the court must reflect that limitation regardless of the verdict. See, for example, MAI 4.11, Notes on Use 2; *Parker v. Pan American World Airways, Inc.,* 447 S.W.2d 731 (Tex.Civ.App.1969) [1, 2]. The liability of the County under the statute was limited to $20,300.90 as a matter of law and the judgment of the court should have been for that amount.

■ We address two additional issues raised by plaintiff. The first is a contention that she is entitled to a *pro rata* share

**2.** Some cases have indicated that such collateral attacks are available where the record "affirmatively discloses that the judgment is void" (*McDougal v. McDougal,* 279 S.W.2d 731 (Mo. App.1955) [31–33] ) or partially void (*Kennedy v. Boden,* 241 Mo.App. 86, 231 S.W.2d 862 (1950) [3, 4] ). We are not convinced that the stipulation in the record of the amounts paid to other claimants is the necessary affirmative disclosure in the record that the judgment is partially void sufficient to support a collateral attack. Nor does it serve judicial efficiency to avoid the issue on direct appeal of the judgment and force it to be litigated collaterally on execution of the judgment.

of the amount of her verdict equivalent to the percentage that $800,000 bears to the total amount of settlements plus her verdict. This contention is based upon 537.-610.4. That subparagraph provides an optional procedure which is available to any party. It does not impose any mandatory requirement upon the public entity to seek apportionment. Nor could such an apportionment proceeding increase the liability of the public entity beyond the limit statutorily established. If that subparagraph is available to give plaintiff an additional recovery, that recovery cannot come from defendant.[3]

■ Plaintiff also contends the judgment should be left intact to protect her rights against the County's insurer for bad faith settlement and disbursement of the $800,-000. Normally, bad faith refusal to settle (which plaintiff claims here) creates a cause of action by the insured against the insurer who has subjected the insured to liability beyond the limits of the policy. That, of course, is not the situation here. The County's liability is limited to $800,000 and exhaustion of the insurance proceeds does not render it liable for the overage. Some courts have recognized an obligation of the insurance company to deal fairly with all claimants and have allowed suits directly against the insurer by claimants in situations not unlike this one where allegations of bad faith settlement are made. *See, Haas v. Mid America Fire & Marine Ins. Co.,* 35 Ill.App.3d 993, 343 N.E.2d 36 (1976); *Alford v. Textile Ins. Co.,* 248 N.C. 224, 103 S.E.2d 8 (1958); *Bartlett v. Travelers' Ins. Co.,* 117 Conn. 147, 167 A. 180 (1933). We do not reach the availability or merits of such an action here. Plaintiff's verdict is a matter of record, and we are unable to see how our reduction of the judgment against the county to the limits established by law can preclude plaintiff from establishing the amount of her loss under such a theory.

We, of course, do not intimate that such bad faith exists, we merely recognize plaintiff's contention that it does.

Judgment reversed and cause remanded with directions to enter judgment for plaintiff and against defendant St. Louis County for $20,300.90.

REINHARD, STEPHAN, SNYDER, SATZ, SIMON and KAROHL, JJ., concur.

PUDLOWSKI, J., dissents.

KELLY, J., joins in dissent.

PUDLOWSKI, Judge, dissenting.

I respectfully dissent for the reasons set forth in my previous authored opinion hereinafter stated. I would affirm the circuit court's judgment.

The relevant facts are as follows: On October 12, 1978, plaintiff-respondent Virginia McConnell was one of approximately 43 passengers of a St. Louis County bus as part of the Fall Color Tour. Ms. McConnell, then aged 79 years and an active lady, suffered severe personal injuries when the bus overturned upon leaving the roadway. She sustained fractured ribs, a collapsed lung, a fracture of the right humerus, a pelvic fracture, and a fracture of the right clavicle. For several months following the accident, she underwent rehabilitation and therapy for these injuries. On November 21, 1979, Ms. McConnell died, for reasons unrelated to the bus accident. Virginia Klamon, her daughter and executrix of her estate, was substituted as nominal plaintiff on April 17, 1980.

Respondent's claim was one of 40 claims brought against St. Louis County and Robert E. Emerick, the driver of the bus, who has since been discharged under bankruptcy. The claims were brought under RSMo § 537.600. Under the statute the common law governmental tort immunity is effective except for limited exceptions: injuries

---

3. We need not decide whether that subparagraph affords any practical remedy in cases such as this. The language is in the past tense indicating that apportionment cannot be sought until after awards have been made or settlements arrived at. We entertain serious doubts that such a procedure could be utilized to require payment back from claimants who have contractually settled their claims, thereby infringing on those contracts which in many cases involve compromise of anticipated judgments.

arising from the negligent acts or omissions by public employees arising out of the operation of motor vehicles (§ 537.600(1)), and injuries caused by the condition of the public entity's property if the property was in a dangerous condition at the time of the injury (§ 537.600(2)).

According to § 537.610, the total extent of a public entity's liability "shall not exceed eight hundred thousand dollars for all claims arising out of a single accident or occurrence and shall not exceed one hundred thousand dollars for any one person in a single accident or occurrence, except [under Missouri Workmen's Compensation Law]." Appellant St. Louis County's insurance carrier, The Hartford Accident and Indemnity Company, made settlements with the 39 other claimants from the bus accident, leaving a balance of $20,300.90 with which to reimburse the last claimant, Virginia McConnell.

At trial, the jury awarded Ms. McConnell $65,000. Appellant St. Louis County contends that the trial judge erred in failing to set aside the judgment of $65,000 and enter a judgment in the amount of $20,300.90 because appellant alleges that St. Louis County could not be liable beyond the $800,-000.00 for all claims arising out of this single accident. I disagree and would affirm the judgment of the trial court.

The trial court did not err in refusing to set aside the jury award of $65,000. Appellant's argument as to liability is premature. As I understand the statute, the public entity may be subject in situations similar to this set of facts to money judgments and claims in excess of $800,000 but is responsible for payment of $800,000. Under the sovereign immunity statute, § 537.610(4) clearly contemplates and makes provisions for the possibility that the total amount of the awards and settlements chargeable against the County may exceed $800,000. The statute clearly provides that an apportionment, or pro-rata distribution may be made if the total sum of awards and settlements exceeds such amount. Section 547.-610(4) provides in full:

If the amount awarded to or settled upon multiple claimants exceeds eight hundred thousand dollars, *any party may apply to any circuit court to apportion to each claimant his proper share of the total amount* limited by subsection 1 of this section. *The share apportioned each claimant shall be in the proportion that the ratio of the award or settlement made to him bears to the aggregate awards and settlements for all claims arising out of the accident or occurrence,* but the share shall not exceed one hundred thousand dollars. (emphasis added).

Respondent claims that she is entitled to her proportion as set forth in this statute. Respondent contends that a reduction of the judgment from $65,000 to $20,300.90, which is the residue of the $800,000, would deny her the right to a fair proportionate share as provided under this section of the statute. I need not address the issue of the appropriate dollar value to be placed on respondent's claim under the statute because that issue of collection and the issue of enforcement of this judgment are not presently before us.

Appellant also alleges that the court erred in submitting plaintiff's verdict directing Instruction No. 4, M.A.I. 31.07 because it was misleading and confusing. I disagree. Taking all the instructions as a whole, I do not find that the jury was mislead or confused in their instructions to adequately compensate the deceased Virginia McConnell for any damages she sustained as to the accident. I would dispose of this point pursuant to Rule 84.16(b). I find no error of law and an extended opinion on this point would have no precedential value.

Therefore, I would affirm the decision of the trial court as to the validity of the judgment and as to the appropriateness of the jury instruction.